2024 IL App (3d) 230543

Opinion filed January 18, 2024

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Circuit No. 22-CF-1678 |
| ALVIN A. HODGE, | ) ) | Honorable Sarah F. Jones, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HETTEL delivered the judgment of the court, with opinion.
Justices Holdridge and Davenport concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant, Alvin A. Hodge,[1] appeals from the Will County circuit court's granting of the

State's petition to deny pretrial release, arguing that the court failed to make the required written

findings and the State's petition to detain was untimely. We affirm.

---

[1]We note that appellate counsel use the name of a different defendant, unrelated to this case, multiple times in the memorandum on appeal. While we understand that counsel are faced with many similar cases, we caution counsel to confirm they are using the correct name.

## I. BACKGROUND

On October 19, 2022, defendant was charged with two counts of aggravated robbery (Class 1) (720 ILCS 5/18-1(b)(1), (c) (West 2022)). He was later indicted on the charges. His bail was set at $1 million, and he remained in custody. On September 29, 2023, defendant filed a motion for pretrial release. In response, the State filed a verified petition to deny pretrial release, alleging defendant was charged with a forcible felony and his release posed a real and present threat to the safety of any person, persons, or the community under section 110-6.1(a)(1.5) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1(a)(1.5) (West 2022)).

The factual basis provided that, on April 30, 2022, at approximately 3:15 a.m., officers were dispatched to a pub with reports of an armed robbery. Upon arriving on scene, the officers discovered a deceased man at the entrance of the pub. Interviews with witnesses and video from the pub established the following: two employees were closing the pub at approximately 3 a.m., and two customers were still present. Two men wearing hoods and face masks entered the bar and asked for a drink. When they were told the bar was closed, they asked if they could use the restroom, and they were allowed to do so. They exited the restroom and again asked for a drink but were refused. At that point they pulled what appeared to be handguns from their sweatshirt pockets, put the four subjects into a corner of the bar, took money out of a purse and the register, threatened to kill the four subjects, and made the subjects get down on their knees. The men then made their way to the exit. One of the customers then stood up, pulled out a pistol, and fired several shots, killing one, and wounding defendant. Defendant managed to get away and was found at a hospital approximately 20 minutes later with a gunshot wound to the back. Police recovered the two handguns used in the robbery outside of the pub. They turned out to be airsoft guns. Defendant denied involvement, stating that he was shot by an unknown assailant in

2

Calumet City. Detectives obtained defendant's phone records, which showed his phone pinging off cellphone towers near the pub before, during, and after the robbery. Defendant was on mandatory supervised release (MSR) at the time for armed robbery.

¶ 5    A hearing was held on the petition on October 16, 2023. The State recited the factual basis. The State asked the court to consider the nature of offense, defendant's prior violent criminal history, and the fact that defendant was known to have had a weapon in the past. The State noted that defendant was on MSR at the time of this offense and stated defendant could pose a threat to any of the witnesses or victims in the case. Defense counsel asked for electronic monitoring, stating that defendant could live with his mother in Chicago, and he would immediately try to find work. Counsel stated that she believed defendant had been under house arrest at some point without any issues. Prior to his arrest, defendant had been participating in a program to help young adults be more productive in society.

¶ 6    The court found the State met its burden and granted the petition. In doing so, the court stated:

> "Show that based on the specific articulable facts of the case, plus the fact that [defendant] is on parole for a forcible felony, a crime of violence, that his continued detention is necessary to avoid a real and present threat to the safety of any person, persons, or the community."

The court's written order was contained on a preprinted pretrial detention order form. The court checked the box stating that it found by clear and convincing evidence that (1) the proof is evident or the presumption great that defendant committed a detainable offense, (2) defendant's pretrial release posed a real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case, and (3) no condition or

3

combination of conditions could mitigation the real and present threat to the safety of any person, persons, or the community, based on the specific, articulable facts of the case. The form also included a portion that said:

> "The Court's reasons for concluding that the Defendant should be denied pre-trial release and why less restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or prevent the Defendant's willful flight from prosecution are based upon the following:
>
> 1. Nature and circumstances of the offense(s) charged.
>
> 2. Defendant's prior criminal history is indicative of violent, abusive or assaultive behavior.
>
> 3. Defendant's psychological, psychiatric or other similar social history indicates a violent, abusive or assaultive nature.
>
> 4. The identity of any person or persons to whose safety the Defendant is believed to pose a threat, and the nature of the threat.
>
> 5. Any statements made by, or attributed to the Defendant, together with the circumstances surrounding them.
>
> 6. The age and physical condition of the Defendant.
>
> 7. The age and physical condition of any victim or complaining witness.
>
> 8. Defendant is known to possess or have access to weapons.
>
> 9. At the time of current offense or arrest, Defendant was on probation, parole, aftercare release, mandatory supervised release or other release from custody pending trial, sentencing, appeal or completion of sentence."

The form also included a number 10, with blank lines where anything additional could be written in. Numbers 1 through 10 had boxes next to them for the court to check. The court checked boxes 1, 2, 4, and 9.

¶ 7                                    II. ANALYSIS

¶ 8        On appeal, defendant contends that the court abused its discretion in granting the State's petition to detain. Specifically, he argues, the court failed to include the necessary written findings, and the State's petition was untimely. We consider factual findings for the manifest weight of the evidence, but the ultimate decision to grant or deny the State's petition to detain is considered for an abuse of discretion. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. Under either standard, we consider whether the court's determination is arbitrary or unreasonable. *Id.*; see *People v. Horne*, 2023 IL App (2d) 230382, ¶ 19. We consider issues of statutory construction *de novo*. *People v. Taylor*, 2023 IL 128316, ¶ 45.

¶ 9        Everyone charged with an offense is eligible for pretrial release, which may only be denied in certain situations. 725 ILCS 5/110-2(a), 110-6.1 (West 2022). The State must file a verified petition requesting the denial of pretrial release. *Id.* § 110-6.1(c). The State then has the burden of proving by clear and convincing evidence (1) the proof is evident or presumption great that defendant committed a detainable offense, (2) defendant poses a real and present threat to any person, persons, or the community or is a flight risk, and (3) no conditions could mitigate this threat or risk of flight. *Id.* § 110-6.1(e). When determining a defendant's dangerousness and the conditions of release, the statute includes a nonexhaustive list of factors the court can consider. *Id.* § 110-6.1(g), 110-5. Section 110-6.1(h)(1) of the Code states that in any order for detention the court shall

5

"make a written finding summarizing the court's reasons for concluding that the defendant should be denied pretrial release, including why less restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or prevent the defendant's willful flight from prosecution." *Id.* § 110-6.1(h)(1).

¶ 10 Defendant takes issue with the check-the-box form the court used for its written decision, stating that the court's order did not satisfy the statute's "written findings" requirement. We disagree for three reasons. First, as stated above (*supra* ¶ 9), the statute sets forth specific factors for the court to consider before denying pretrial release. These factors were specifically enumerated in the form the court used. It also gave a blank space for the court to include any additional factors it considered that were not enumerated. By checking the boxes next to the factors, the court indicated which of the factors the court found to be present in the case, based on the facts presented at the hearing. Here, the court based its decision on (1) the nature and circumstances of the offense, (2) defendant's prior criminal violent criminal history, (3) the identity of the witnesses and victims whose safety defendant was believed to pose a threat, and (4) the fact that defendant was on MSR at the time he committed the offense. This was particularly clear based on the hearing as a whole.

¶ 11 Second, we note that such written findings have been required by other statutes as well. Our supreme court has held that the point of requiring written findings is to give notice of the reasons for the court's findings for appellate review. See *In re Madison H.*, 215 Ill. 2d 364, 374-75 (2005) (the purpose of the requirement that the court put in writing the factual basis supporting its determination of parental unfitness was for appellate review); *People v. Porter*, 122 Ill. 2d 64, 81-82 (1988) (the purpose of the requirement that, to summarily dismiss a

postconviction petition at the first stage, the court shall file a written order, specifying the findings of fact and conclusions of law, was to facilitate appellate review of the court's dismissal). Thus, where the transcript and order of the court "provide an equal opportunity to review the validity of the finding on appeal," it is sufficient. See *In re Madison H.*, 215 Ill. 2d at 375. Here, based on the hearing and the court's order, we are able to fully consider the court's decision.

¶ 12 Third, we find support for this decision in other decisions of the appellate court. In *People v. McKenzie*, 2024 IL App (4th) 231063-U, ¶ 17, the Fourth District found that the court's written findings were enough where it solely wrote " 'nature of [the] charges' " and " 'history [and] characteristics of defendant' " as these two factors were appropriate, enumerated factors in the Code. Further, in *Horne*, 2023 IL App (2d) 230382, ¶¶ 12, 35, the Second District upheld a written finding on a form very similar to this one, as the court had, again, checked boxes for appropriate factors under the statute. Based on the foregoing, we find the court's order was sufficient. We note defendant does not challenge the court's actual findings.

¶ 13 Defendant further contends that the State's petition was untimely. We have already considered this issue in *People v. Kurzeja*, 2023 IL App (3d) 230434, ¶¶ 14-15. In *Kurzeja*, we stated that defendants who were arrested prior to the implementation of bail reform

> "can either 'elect to stay in detention until such time as the previously set monetary security may be paid' (*People v. Rios*, 2023 IL App (5th) 230724, ¶ 16), or file a motion to modify. If defendant chooses the latter option, the State may file a responding petition. '[O]nce a defendant elects "to have their pretrial conditions reviewed anew" (*Rios*, 2023 IL App (5th) 230724, ¶ 16), the matter returns to the proverbial square one, where the defendant may argue for the most

lenient pretrial release conditions, and the State may make competing arguments.' *People v. Jones*, 2023 IL App (4th) 230837, ¶ 23. 'This is analogous to when a change in the sentencing law occurs after a defendant has committed the offense—the defendant is given the opportunity to choose to be sentenced under that law that existed at the time of the offense or the newly enacted law.' *Rios*, 2023 IL App (5th) 230724, ¶ 17." *Id.* ¶ 14.

Based on this, we found that the State was permitted to file a responsive petition if defendant chose to file a motion for release. *Id.* ¶ 15.

¶ 14 We adopt this reasoning here and hold that the State was permitted to file a petition to detain in response to defendant's motion seeking pretrial release. As defendant makes no other arguments, we affirm the court's decision to grant the State's petition.

¶ 15 III. CONCLUSION

¶ 16 The judgment of the circuit court of Will County is affirmed.

¶ 17 Affirmed.

*People v. Hodge*, 2024 IL App (3d) 230543

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 22-CF-1678; the Hon. Sarah F. Jones, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Carolyn R. Klarquist, and Michael H. Orenstein, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Patrick Delfino and David J. Robinson, of State's Attorneys Appellate Prosecutor's Office, of Springfield, for the People. |