**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 240367-U

Order filed September 9, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, La Salle County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-24-0367 Circuit No. 24-CF-5 |
| MICHAEL A. BOAZ, | ) ) ) | Honorable H. Chris Ryan Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ALBRECHT delivered the judgment of the court.
Justice Davenport concurred in the judgment.
Presiding Justice McDade dissented.

_____

**ORDER**

¶ 1     *Held*:   The circuit court did not abuse its discretion in granting the State's verified petition to detain defendant.

¶ 2     Defendant, Michael A. Boaz, appeals from the circuit court's decision to grant the State's verified petition to deny pretrial release. We affirm.

¶ 3                                        I. BACKGROUND

¶ 4          On January 2, 2024, the State charged defendant with home invasion (720 ILCS 5/19-6(a)(3) (West 2022)), a Class X felony, and burglary (*id.* § 19-1(a)), a Class 2 felony. The State filed a verified petition to deny defendant pretrial release, alleging he was charged with a detainable offense and his release posed a real and present threat to the safety of any person, persons, or the community under section 110-6.1(a)(1.5) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1(a)(1.5) (West 2022)).

¶ 5          The State's factual basis in support of its petition provided that, on November 2, 2023, officers were sent to the residence of Nicholas Garcia and spoke with him and his girlfriend, Lauren Gama. Gama stated that she was asleep in the residence when she heard three male voices. She text messaged Garcia and learned that he was not home. The power at the residence then went out. Two men entered the bedroom, put a gun to Gama's head, and demanded the code to the safe, which she did not have. The men stayed at the residence for some time "rummaging through items." An Xbox gaming system was stolen. Gama then heard gunshots, and the men fled out the back door. Garcia stated that he arrived home and was confronted by a man pointing a pistol at him. Garcia indicated that he exchanged gunfire with the men in defense of his residence. Two different calibers of shell casings were found at the scene. As police were responding to the scene, an officer saw defendant walking in an alley one block west and three blocks south of the home invasion. The officer made contact with defendant, who was wearing a hooded sweatshirt that was damp with sweat, despite the fact that the temperature was below freezing. Defendant stated that he had just come from his aunt's house, but his aunt confirmed that was a lie. Codefendant Fernando Martinez arrived at Morris Hospital with a gunshot wound to his right arm. He would not provide details about the injury. Martinez's girlfriend indicated that he was shot in Mazon, and she picked him up there, but a subsequent analysis of her cell

2

phone showed that she was not near Mazon that evening. The cell phone also showed that she was text messaging defendant at the hospital, providing updates. Defendant told her to stop sending him text messages.

¶ 6    Defendant, Martinez, and two other men arrived at a residence belonging to Brandie Smith later on the date of the incident, and video was captured from a neighboring residence. On the video, Martinez was seen carrying a bag with what appears to be an Xbox inside. Martinez pulled a handgun out of his waistband and handed it to another man. Martinez can be heard describing the shooting on the video, stating "I didn't blow at him first." Martinez simulated the shooting and said, "boom, boom, boom, boom." He further described the length of time they were in the home, the size of the safe, and standing over Gama requesting the code. Defendant was identified on the video making statements such as "[Garcia] never walked in" and describing the size of the safe to Smith. Smith stated that defendant was in possession of the Xbox when he arrived. Smith gave the Xbox to a relative of the victims, which was turned over to the police. The Xbox serial number matched the one that was stolen. Garcia had a security system in his garage that took photographs. The last photograph before the power was cut showed a person in the garage dressed in the same manner as defendant.

¶ 7    Defendant was on pretrial release in a pending felony burglary case at the time of the instant offenses. A pretrial risk assessment indicated that defendant was a level two risk, with level six being the highest possible risk. Defendant's criminal history included convictions for possession of a stolen firearm, forgery, criminal damage to property, and driving on a suspended license.

¶ 8    On January 8, 2023, the court held a hearing on the State's petition, which the court granted without making the requisite findings required pursuant to the Code. See *id.* § 110-

6.1(h)(1). Defendant appealed, and this court reversed the court's judgment and remanded for a new pretrial detention hearing where the court was directed to make the required statutory findings. *People v. Boaz*, 2024 IL App (3d) 240014-U.

¶ 9 On May 3, 2024, the court held a new hearing on the State's petition to deny defendant pretrial release. The State provided the factual basis and noted defendant was on pretrial release at the time, which he violated by committing the instant offense. The State argued defendant was a threat and no conditions could mitigate the threat. Defense counsel argued there was no indication that defendant was involved in the crime, was a violent person, or engaged in any violence personally. Defense counsel asked the court to consider GPS monitoring, house arrest, and/or reporting to pretrial services. The court granted the State's petition, finding the State met its burden by clear and convincing evidence. In doing so, the court noted defendant was involved in a home invasion with a weapon during the night, which was a threat to a person or community. The court found none of the available options for pretrial release would mitigate the threat defendant posed based on the circumstances of this case. The court's written order provided that its reasoning was made on the record. On May 14, 2024, defendant filed a motion for relief from denial of pretrial release. Following a hearing, the court denied the motion.

¶ 10                                    II. ANALYSIS

¶ 11 On appeal, defendant argues the court erred in granting the State's petition. We consider factual findings for the manifest weight of the evidence, but the ultimate decision to grant or deny the State's petition to detain is considered for an abuse of discretion. *People v. Mikolaitis*, 2024 IL App (3d) 230791, ¶ 9. Under either standard, we consider whether the court's determination is arbitrary or unreasonable. *Id.*

4

¶ 12    Everyone charged with an offense is eligible for pretrial release, which may only be denied in certain situations. 725 ILCS 5/110-2(a), 110-6.1 (West 2022). The State must file a verified petition requesting the denial of pretrial release. *Id.* § 110-6.1. The State then has the burden of proving by clear and convincing evidence (1) the proof is evident or presumption great that defendant committed a detainable offense, (2) defendant poses a real and present threat to any person, persons, or the community or is a flight risk, and (3) no conditions could mitigate this threat or risk of flight. *Id.* § 110-6.1(a), (e). When determining a defendant's dangerousness and the conditions of release, the statute includes a nonexhaustive list of factors the court can consider. *Id.* §§ 110-6.1(g), 110-5.

¶ 13    We find the court did not abuse its discretion by detaining defendant. First, the proof was evident defendant committed the detainable offense where he was stopped by an officer in a nearby alley close to the location of the crime, he was sweaty and the temperature was below freezing, the clothing he was wearing at that time matched the clothing in the surveillance photograph taken from the victims' home, defendant gave an alibi refuted by his aunt, defendant received text messages from a codefendant's girlfriend providing updates while at the hospital until he told her to stop, and later video surveillance showed defendant with his codefendants where he discussed specific details of the crime and they had the stolen Xbox in their possession. Second, it was not against the manifest weight of the evidence for the court to find that he posed a danger to the community. Defendant committed a home invasion, where the power was cut from a home, entry was forced into a residence, a victim was held at gunpoint, an item was stolen, and gunshots were fired at another victim. Third, the State presented evidence that there were no conditions available to mitigate the threat defendant posed. The statute provides factors the court can consider when considering the conditions of release, and the State presented

evidence of such factors, including the nature and circumstances of the offense and the history and characteristics of defendant. *Id.* § 110-5. Defendant committed these offenses while on pretrial release for a different felony burglary and had a criminal history. The court found that there were no circumstances where pretrial release would mitigate the risk defendant posed. This was not against the manifest weight of the evidence. Taking the evidence before us, we cannot say the court's decision to detain defendant was an abuse of discretion.

¶ 14       In coming to this conclusion, we reject defendant's argument that the court's findings on remand were no better than at the initial hearing, which this court found to be insufficient. At the initial hearing, the court made no findings on each of the propositions whereas, on remand, the court made findings for each proposition. Further, we find no issue with the court's written order providing its findings were made of record because "where the transcript and order of the court provide an equal opportunity to review the validity of the finding on appeal, it is sufficient." (Internal quotation marks omitted.) *People v. Hodge*, 2024 IL App (3d) 230543, ¶ 11.

¶ 15                                III. CONCLUSION

¶ 16       The judgment of the circuit court of La Salle County is affirmed.

¶ 17       Affirmed.

¶ 18       PRESIDING JUSTICE McDADE, dissenting:

¶ 19       I dissent from the majority's decision to affirm the circuit court's order granting the State's verified petition to deny pretrial release.

¶ 20       As the majority recites, section 110-6.1(e) of the Code of Criminal Procedure of 1963 states that "[a]ll defendants shall be presumed eligible for pretrial release. . . ." 725 ILCS 5/110-6.1(e) (West 2022). To rebut this presumption, the State must prove the following three elements, by clear and convincing evidence: (1) that the proof is evident or the presumption great

6

that the defendant has committed a detainable offense; (2) that the defendant poses a real and present threat to the safety of any person, persons, or the community, or a risk of flight; and (3) that no conditions can mitigate this threat. *Id*.

¶ 21        I agree with the majority's findings that the State met its burden of proof with respect to the first and second of the above elements. Regarding the third element, the majority finds that the circuit court's determination that there were no mitigating conditions was not against the manifest weight of the evidence because defendant had a criminal history and allegedly committed the offense in this case while on pretrial release for another case involving burglary. As the majority details, defendant's criminal history includes convictions for possession of a stolen firearm, forgery, criminal damage to property, and driving on a suspended license, and a charge of burglary. None of these convictions or charges inherently involves an act of violence against another person, and there is nothing in the record sufficiently indicating defendant's actual involvement in any such activity. Moreover, as the majority further details, defendant was assessed as only a level two out of six risk on his pretrial risk assessment. Based on such facts and evidence, it is questionable whether defendant posed any actual danger and doubtful that no conditions—including GPS, as he himself urged—could mitigate any alleged dangerousness. Accordingly, I would find that the State failed to meet its burden of proof regarding the third element and reverse the circuit court's order as an abuse of discretion.